# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AAA, a minor, by her next friends and parents, Amir Abdul-Alim and Hafsa Elarfaoui, and on their own behalf,<br><br>        Plaintiffs<br><br>v.<br><br>Clark County School District, et al.,<br><br>        Defendants | Case No.: 2:20-cv-00195-JAD-BNW<br><br>**Order Overruling Objections, Granting in Part Motions to Dismiss and Summary Judgment**<br><br>[ECF Nos. 417, 434, 435, 446, 458, 470, 507, 515, 516] |

Pro se plaintiffs Amir Abdul-Alim and Hafsa Elarfaoui sue the Clark County School District,[1] the Nevada Department of Education (DOE), and various administrators and teachers in their official capacities for events arising from the education of their daughter, AAA.[2] Defendants Jesus Jara, Jelanie Elby, Jodie Schraven, Melonie Poster, Nicole Baumgartner, Shelbe Rogers, Teri Aquilina, Daniel Ebihara, Sonya Holdsworth, Markos Stoumibs, Armine Darmandjian, Melody Thompson, Rachael Jacobi, Robert C. Weires, and Barbara Fair (the individual CCSD defendants) filed motions to dismiss, arguing that the claims against them are redundant of the claims against CCSD.[3] Defendants Jhone Ebert, Will Jensen, Connie Torres, Elizabeth Ashley, Jamie Resch, Perry Zirkel, and DOE move to dismiss the claims against them because they are entitled to various immunities, plaintiffs' 42 U.S.C. § 1983 claims are precluded

---

[1] When referring to Clark County School District throughout this order, I use CCSD and the District interchangeably.

[2] Plaintiffs have requested oral argument on all pending motions. After reviewing the parties' briefs, I find all matters appropriate for disposition without oral argument. L.R. 78-1.

[3] ECF No. 434 (Jara's motion to dismiss); ECF No. 435 (remaining CCSD defendants' motion to dismiss).

by the Individuals with Disabilities Education Act (IDEA), they failed to properly exhaust their IDEA claims against DOE, and the claims against the individual DOE defendants are redundant of claims against DOE.[4]  And CCSD moves to dismiss and for summary judgment, arguing that plaintiffs failed to exhaust their administrative remedies on some claims and have no evidence or valid legal theories to support the rest.[5]  Also pending are plaintiffs' challenges to four magistrate-judge discovery orders.[6]

       I deny plaintiffs' appeals of the discovery orders because those rulings are not erroneous. I dismiss with prejudice plaintiffs' claims against all individual defendants and I dismiss plaintiffs' § 1983, negligence, and some IDEA claims against DOE.  I grant DOE summary judgment on plaintiffs' ADA, § 504 discrimination, privacy, and other IDEA claims.[7]  I also grant summary judgment to CCSD on plaintiffs' § 1983, negligence, ADA, § 504 discrimination, and privacy claims, and a majority of their IDEA claims.  I deny CCSD summary judgment on a portion of those claims, without prejudice to refiling a renewed summary judgment motion.  The net result of these myriad rulings is that this case proceeds against CCSD alone and only with respect to plaintiffs' IDEA claims challenging the November 1, 2019, decision related to (1)

---

[4] ECF No. 446.

[5] ECF No. 507.

[6] ECF No. 417; ECF No. 470; ECF No. 515; ECF No. 516.

[7] DOE did not move for summary judgment but courts may grant summary judgment *sua sponte* if the plaintiff is "given reasonable notice that the sufficiency of his . . . claim will be in issue." *Verizon Delaware, Inc. v. Covad Comms. Co.*, 337 F.2d 1081, 1092 (9th Cir. 1993) (quoting *Buckingham v. U.S.*, 998 F.2d 735, 742 (9th Cir. 2004)).  The sufficiency of these claims is at issue in at least two motions to dismiss and one summary-judgment motion, each of which plaintiffs have thoroughly responded to.  I choose to grant summary judgment to DOE on these claims rather than dismiss them because CCSD's summary-judgment arguments against them apply with equal force to DOE.

delayed implementation of AAA's 2019 individualized education plan (IEP) and (2) whether she received a free appropriate public education (FAPE) during the 2018–19 school year.

## Background

### I.   Facts relevant to plaintiffs' IDEA and IDEA-related claims

AAA is a student at an elementary school within CCSD.  Before kindergarten, the District determined that she was eligible for special-education services under the IDEA's "[a]utism [s]pectrum [d]isorder" category.[8]  In 2016, as AAA entered kindergarten, her parents asked the District to evaluate her for hearing loss.[9]  The District reevaluated AAA and determined that she was eligible for services under the IDEA's hearing-impairment category.[10] It also reassessed her for autism and determined that she no longer qualified under the autism-spectrum-disorder category.[11]  The District created an IEP for her kindergarten year to provide services for her hearing impairment.[12]  The District conducted additional assessments and observations in early 2017 in order to formulate AAA's 2017–18 IEP.[13]

At the beginning of the 2018–19 school year, dissatisfied with AAA's academic progress in years prior and doubting the District's decision to change AAA's eligibility category, plaintiffs requested an independent educational evaluation (IEE) at the District's expense and filed a due-process complaint under Nevada's IDEA hearing procedures.[14]  The District granted

---

[8] AR 850 (impartial hearing officer Oldenburg's decision).

[9] AR 851.

[10] AR 1935–55 (2016 Reevaluation Report).

[11] Id.

[12] AR 1955, AR 1957, AR 1958–59; AR 1759–76 (AAA's 2016–17 IEP).

[13] AR 1961–74 (AAA's 2017–18 IEP).

[14] AR 2118 (CCSD letter granting IEE request); AR 485 (parents' letter requesting due-process hearing).

the IEE request, and plaintiffs chose to have the evaluation conducted by Dr. Rachel Davis.[15]
AAA's father signed a consent to the release of AAA's protected health information, to expire
"at the completion of therapy."[16]  Dr. Davis conducted various assessments, observed AAA on
multiple occasions, and completed her report on January 12, 2019.[17]  Three days later, Dr. Davis
met with AAA's father to discuss her findings.  Approximately two hours before that meeting,
she emailed her IEE report to the District.[18]

AAA's 2017–18 IEP was set to expire on November 2, 2018, and the District was
required to review and make adjustments to it for the 2018–19 school year by November 3,
2018.[19]  But the District delayed that process while Dr. Davis conducted the IEE and because it
believed plaintiffs' due-process complaints prevented it from moving forward with revised
plans.[20]  Once the District received Dr. Davis's report, it delayed further because AAA's parents
refused to have any further assessments completed by school officials as part of the IEP review
process.[21]  Because of that delay, AAA remained on her 2017–18 IEP throughout the majority of

---

[15] AR 2118.

[16] ECF No. 507-5 at 2 (signed "Consent for Transmission of Protected Health Information" form).  Plaintiffs dispute that they consented to Dr. Davis's release of information.  This dispute is addressed at section II(G), *infra*.

[17] AR 1295 (Dr. Davis's testimony from administrative hearing).

[18] AR 1300, 1315–16.

[19] *See* AR 1961 (2017–18 IEP noting IEP review date).

[20] *See* AR 2198 (impartial hearing officer Ashley's findings of fact).

[21] *See* AR 2090 (letter from AAA's father in which he refused to meet with school officials to discuss reevaluation and stated "I do not need another IEP done on my daughter by you or any affiliate of Joseph E. Thiriot Elementary School"); AR 2093 (October 2018 letter declining evaluations until IEE is completed and AAA's due-process complaints had "gone through the appropriate channels").

her 2018–19 school year.[22]  The District eventually created a new IEP in May 2019, weeks before the end of the school year.[23]

## II.    Plaintiffs' IDEA due-process complaints

In October 2018, plaintiffs filed their first due-process complaint on AAA's behalf, challenging the 2016 reevaluation and the adequacy of her 2017–18 IEP.[24]  The case was assigned to Impartial Hearing Officer (IHO) Victoria Oldenburg.[25]  In December 2018, IHO Oldenburg issued her determination that the change to AAA's eligibility category from autism spectrum disorder to hearing impairment was appropriate, the District properly notified AAA's parents of the reevaluation, the District properly informed them of the procedural safeguards available during the reevaluation process, and AAA received a FAPE during the 2017–18 school year.[26]  Plaintiffs appealed and State Review Officer (SRO) Joyce Eckrem upheld IHO Oldenburg's decision.[27]

In February 2019, plaintiffs filed a second due-process complaint, which was assigned to IHO Jamie Resch.[28]  But plaintiffs moved to disqualify Resch after learning that he was "Facebook friends" with the attorney representing the District.[29]  Resch denied that motion[30] and

---

[22] See AR 2226–27.

[23] Id.

[24] AR 846.  Plaintiffs also raised issues concerning AAA's 2018–19 year, but those were not considered in the first due-process hearing because the parties "were working toward a resolution."  AR 847 n.2.

[25] AR 846.

[26] AR 863–69.

[27] AR 972–82.

[28] See ECF No. 478 at 49–52 (Resch order).

[29] Id.; see also AR 2254–55 (letter by plaintiff to superintendent Jesus Jara complaining of Resch's impartiality).

[30] ECF No. 478 at 49–52.

plaintiffs withdrew their complaint.  They then filed a third due-process complaint alleging that the District violated the IDEA when it failed to obtain parental consent to view Dr. Davis's IEE report and when it delayed implementation of AAA's 2018–19 IEP. [31]  The case was assigned to IHO Elizabeth Ashley, who ruled on numerous pre-hearing disputes and presided over a three-day hearing.[32]  In September 2019, Ashley issued a decision finding that the District did not violate the IDEA.[33]  She concluded that the District had no duty to obtain parental consent to receive Dr. Davis's IEE report, the delayed IEP did not deprive AAA of a FAPE, and the parents' contention that their participation in the IEP process was impeded was meritless.[34]  Plaintiffs appealed Ashley's decision, and SRO Perry Zirkel affirmed Ashley's legal conclusions about the issue of IEE consent.[35]  He also determined that the District's decision to postpone revising the IEP in the latter half of AAA's second grade year was likely a procedural IDEA violation but that any such violation did not result in the deprivation of a FAPE.[36]

### III.   Plaintiffs' second-amended complaint

Plaintiffs initially filed this lawsuit in state court in December 2019 and filed their operative, second-amended complaint in April 2021.[37]  In it, plaintiffs describe the "nature of this case" as one concerning whether the District provided AAA with a FAPE during the 2018–

---

[31] AR 1412–30.

[32] Plaintiffs moved to disqualify Ashley, to subpoena Dr. Davis to testify at the hearing, and to compel production of additional documents from the District.  Ashley denied the first, granted the second in part, and denied the third.  AR 1613–23; *see also* AR 985–1405 (due-process hearing transcript).

[33] AR 2221–44.

[34] *Id.*

[35] AR 2415–27.

[36] AR 2426.

[37] ECF No. 420.

19 school year by failing to "provide evidence of their methodology to improve AAA's MAPs[38] scores and have failed to provide evidence of their progress monitoring between quarterly benchmarking periods," and "substantially delay[ing] the implementation" of AAA's 2018–19 IEP.[39]  Plaintiffs also contend that the District "failed to obtain [p]arental consent prior to receiving AAA['s] IEP report."[40]  Despite describing the nature of this case so narrowly, the complaint contains allegations concerning a 2016 injury AAA sustained while riding a school bus, the District's 2016 reevaluation and the resulting 2017–18 IEP, and the bias plaintiffs allegedly faced during their second due-process proceedings before Resch.

Plaintiffs title their first claim "Failure to Provide Equal Access to Public Educational Programs."[41]  In it, they recite facts concerning AAA's 2016 reevaluation and her academic progress during her first-grade year.[42]  They then allege that AAA's second-grade teachers failed to provide evidence of their methodology to improve AAA's test scores and monitor her progress, and they conclude that CCSD's "absence of evidence of AAA's regular assessments and infrequent review of her data reflects that the [d]efendants did not implement AAA's IEPs with fidelity."[43]  They allege that CCSD "failed to take affirmative actions to provide for a proven method[] of teaching practices that are aligned with common core standards to meet AAA's instructional needs."[44]  Plaintiffs then describe the events surrounding Dr. Davis's

---

[38] "MAP" stands for "Measures of Academic Progress" and refers to an assessment Clark County School District administers to its students.

[39] *Id*. at 8.

[40] *Id*.

[41] *Id*.

[42] *Id*. at ¶¶ 46–49.

[43] *Id*. at ¶ 51.

[44] *Id*. at ¶ 52.

provision of AAA's IEE report and accuse Barbara Fair, the CCSD employee who received the report, of failing "to follow [] CCSD['s] policy, which required Dr. Davis to obtain a consent prior to accepting the IEE report and before making payments."[45]  Plaintiffs go on to allege that the District failed to develop a "Positive Behavior Support (PBS) plan" and that the "supported services, related services, and criterion-referenced assessment that are associated with AAA's intraindividual differences are not effectively used in her instructional planning."[46]  They allege that CCSD and DOE violated their "parental rights of getting a 'free appropriate public education'" for AAA, accuse both entities of having "poorly trained workers," and state that the actions of some CCSD employees "are not aligned with [] CCSD's policies, practices, and [] procedures" in violation of the ADA and § 504.[47]

In their second claim, entitled "Violations of Educational Rights," plaintiffs complain about the delayed implementation of AAA's 2018–19 IEP and assert that the delay caused a deprivation of educational benefits in that school year.[48]  They then claim that AAA "is a victim of educational neglect practices" in violation of FERPA and "Nevada state laws prohibiting denying student and parent rights."[49]  Their third claim is entitled "Violations of Protected Rights 42 U.S.C. 1983" and details alleged transgressions plaintiffs encountered before the administrative-hearing officers assigned to their due-process complaints.[50]  They claim that they were "denied the opportunity to fully participate" in the due-process proceedings because DOE

---

[45] *Id*. at ¶ 63.

[46] *Id*. at ¶ 64–65.

[47] *Id*. at ¶ 67, 72–73.

[48] *Id*. at ¶¶ 75–79.

[49] *Id*. at ¶ 80.

[50] *Id.* at ¶¶ 81–103.

"denied [p]laintiff the duty of selecting a qualified IHO."[51]  They complain that IHO Resch

"failed to voluntarily disclose critical notice" of his Facebook friendship with CCSD's counsel.[52]

They then detail various evidentiary decisions that IHO Ashley made before and during

plaintiffs' third due-process hearing, including Ashley's decisions to limit the scope of Dr.

Davis's testimony and deny plaintiffs' requests to (1) admit their due-process complaint as

evidence; (2) have their "Parental Safeguards" read to them at the hearing; and (3) admit the

2018 IEP that was implemented in May, along with other motions on "preliminary matters."[53]

They also complain that Ashley reviewed plaintiffs' written closing argument, "provide[d]

restrictions concerning it," and shared it with CCSD's counsel.[54]  Plaintiffs allege that Ashley's

finding of no IDEA violation was without merit and that Zirkel's decision affirming Ashley's

holding lacked "factual evidence" and gave too much deference to Ashley's determinations.[55]

They claim that CCSD and DOE also procedurally violated the IDEA by failing "to make

available all required educational records."[56]

     In an additional section titled "By Way of Background," plaintiffs detail the events

surrounding an injury AAA sustained while riding on a school bus on May 25, 2016.[57]  They

allege that the school notified them after the incident and they brought her to the hospital.  They

claim that school officials mishandled the incident and the investigation that followed.[58]  Based

---

[51] *Id*. at ¶ 84.

[52] *Id*. at ¶ 86.

[53] *Id*. at ¶¶ 87–88, 92–94.

[54] *Id*. at ¶ 94.

[55] *Id*. at ¶¶ 99–102.

[56] *Id*. at ¶ 103.

[57] *Id*. at ¶¶ 105–141.

[58] *Id*. at ¶¶ 107–120.

on the timing of the incident and the onset of AAA's hearing and behavioral symptoms, plaintiffs "now believe[] that the bus incident is related to the declines of AAA's academic progress."[59] Plaintiffs allege that CCSD breached the "special legal duty under Nevada law to protect students" and "failed to implement a reasonable care plan for AAA's safety."[60]   The plaintiffs allege that CCSD "denied [] AAA opportunities of making meaningful progress in her learning environment during school years 2016–2019" because "there was no reasonable care plan for monitoring physical, mental, and emotional changes after the bus related incident."[61]

In another, separate portion of the complaint titled "Statement of Claims," plaintiffs state that AAA has a right to due process and equal protection under the Fourteenth Amendment, that CCSD and DOE officials are liable under § 1983, that "CCSD and DOE are liable for the torts (negligence) committed by their employees," and that CCSD and DOE are responsible for providing AAA a FAPE under the IDEA.[62]   Their "Statutory Background" section cites only the IDEA and its enabling regulations.[63]   Plaintiffs also include an "Affirmative Claims" section, which includes paragraphs labeled "unclean hands," "contribution," "final administrative decision was arbitrary and capricious," "preclusion," "proximate cause," and "mitigated damages."[64]   The section reads as if it were an "affirmative defenses" section in a defendant's answer, and contains some legal theories of liability but no new allegations of wrongdoing.[65]

---

[59] *Id*. at ¶ 131; *see also* ¶ 135.

[60] *Id*. at ¶¶ 136, 138.

[61] *Id*. at ¶ 140.

[62] *Id*. at ¶ 147.

[63] *See id*. at ¶¶ 149–152.

[64] *Id*. at 33–39.

[65] *See id*. at ¶¶ 153–174.

1        As for relief, plaintiffs request educational interventions like "compensatory occupational

2   educational services delivered in a 1:1 setting," reimbursement for after-school tutoring,

3   "speech/language therapy services," and "applied behavioral analysis services."[66]  They also ask

4   for a "clearer focus on honesty and transparency with all communications and protocols that

5   [are] used to communicate both internally and externally concerning [p]laintiff'[s] well-being"

6   and $3 million for pain and suffering.[67]

7        I liberally construe[68] this inartfully pleaded complaint to include: (1) a § 1983 claim

8   brought to enforce the IDEA and plaintiffs' Fourteenth Amendment due-process rights; (2) a

9   negligence claim for actions related to AAA's 2016 bus injury; (3) IDEA claims appealing both

10  decisions from the state due-process hearings, with related § 504 FAPE claims; (4) ADA and

11  § 504 discrimination claims; and (5) a right-to-privacy claim arising under FERPA and the

12  IDEA.

13                    **Discussion**

14  **I.**     **Objections to the magistrate judge's orders**

15       Under 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge "to

16  hear and determine any pretrial matter"—including scheduling orders and discovery disputes—

17  "pending before the court."[69]  A judge may reconsider any pretrial matter under this section

18  when it has been shown that the magistrate judge's order "is clearly erroneous or contrary to

19  —————————————————

20  [66] *Id*. at 34.

    [67] *Id*. at 34–35.

21  [68] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

22  [69] 28 U.S.C. § 636(b)(1)(A); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (noting that

23  courts have "broad discretion" to "permit or deny discovery"); *Hoar v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'nondispositive' of the litigation.").

law."[70]   A magistrate judge's order is "clearly erroneous" if the court has a "definite and firm

conviction that a mistake has been committed."[71]   An order is contrary to law when it fails to

apply or misapplies relevant statutes, cases, or procedural rules.[72]

### A.      Objection to quashed subpoenas (ECF No. 417)

Plaintiffs first take issue with the magistrate judge's order granting defendants' motion to

quash "subpoenas" directed to non-parties Autumn Schneider, Myela Gustellan, Priscella Smith,

Brenda Larson Mitchell, Dolores Williamson, Lola Gonzales, and Bianca Babcock.[73]   Magistrate

Judge Weksler quashed those subpoenas because they did not comply with Federal Rule of Civil

Procedure (FRCP) 45—the rule that governs *non-party* subpoenas—and instead sought answers

to interrogatories under FRCP 33 and requests for admissions under FRCP 36, which apply only

to parties.[74]   That ruling is legally correct: only parties to an action may be served interrogatories

and requests for admission.[75]   Subpoenas can only request presence at a deposition or the

production of documents from nonparties.[76]   And upon review of the subpoenas at issue, I find

that Judge Weksler did not err in concluding that the subpoenas were really improper discovery

requests.   So I overrule plaintiffs' objections.

---

[70] 28 U.S.C. § 636(b)(1)(A).

[71] *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993); *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948).

[72] *Cf. Grimes v. City and Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991).

[73] *See* ECF No. 389 (defendants' motion to quash); ECF No. 412 (defendants' supplement to motion, listing all subpoenas and their contents); ECF No. 415 (minute order quashing subpoenas); ECF No. 422 at 49–51 (transcript of motion hearing).

[74] ECF No. 422 at 49–51.

[75] *See* Fed. R. Civ. P. 33; Fed. R. Civ. P. 36.

[76] *See* Fed. R. Civ. P. 45(B) & (C).

**B.    Objection to denial concerning reissuance of DOE subpoena (ECF No. 470)**

Plaintiffs also challenge Judge Weksler's order denying their request to reissue a subpoena to the DOE.  To understand plaintiffs' objections, a bit of procedural history is required.  Plaintiffs originally filed this case against CCSD and some individual defendants.[77] During discovery, CCSD asked DOE for the administrative records from plaintiffs' IDEA due process hearings.  DOE provided those records,[78] but plaintiffs believed documents were missing.[79]  Judge Weksler held multiple hearings and ordered DOE—which was not yet a party to the litigation —to make representations regarding what was in the administrative record, what wasn't, and how plaintiffs could get the information they thought should have been included.[80] In October 2020, DOE filed a status report outlining the documents plaintiffs believed were missing and indicated that they had some of those documents, but they were not part of the administrative record CCSD requested and plaintiffs had not subpoenaed DOE to retrieve them.[81]

In January 2021, plaintiffs moved to amend their complaint to name DOE and DOE employees as defendants.[82]  And in February 2021, plaintiffs moved the court to issue a subpoena against DOE.[83]  Judge Weksler granted that motion on February 18, 2021, but DOE

---

[77] *See* ECF No. 1-2.

[78] *See* ECF Nos. 142–46; ECF Nos. 231–41.

[79] *See e.g.*, ECF No. 194; ECF No. 200; ECF No. 219.

[80] *See, e.g.*, ECF No. 193; ECF No. 200; ECF No. 214; ECF No. 217; ECF No. 220; ECF No. 225.

[81] ECF No. 228.

[82] ECF No. 345.

[83] ECF No. 358.

1   wasn't served with the subpoena until March 22nd.[84]  At that point, the subpoena imposed a

2   response deadline that had already passed and was served after the then-operative discovery

3   deadline of March 16, 2021.[85]   DOE objected to the subpoena on those bases.[86]  Plaintiffs did

4   not respond to those objections or modify their subpoena.  On April 6, 2021, Judge Weksler

5   granted plaintiffs' motion to extend the discovery deadline to June 4, 2021, and ordered the

6   parties to propound any remaining discovery by April 23, 2021.[87]  A few days later, Judge

7   Weksler granted plaintiffs' motion to amend their complaint, and DOE was added as a

8   defendant.[88]

9            On May 10, 2021, plaintiffs filed a "motion to terminate declaration."[89]  In it, they

10  complained that the DOE subpoena wasn't served on time because of issues with plaintiffs'

11  process server[90] and asked the court to "terminate" plaintiffs' previously filed "declaration of

12  proof of service" and reissue the DOE subpoena.[91]  On May 14, 2021, Judge Weksler struck the

13  declaration but denied plaintiffs' request to reissue the subpoena because DOE was now a party

14  to this case and, "[a]s such, [p]laintiffs may simply propound discovery on [DOE] and do not

15  need a subpoena."[92]

16

17

---

18  [84] ECF No. 369; ECF No. 482 at 4.

19  [85] *See* ECF No. 322 (minute order setting discovery deadline).

    [86] ECF No. 482-2 at 2.

20  [87] ECF No. 415.

21  [88] ECF No. 419; ECF No. 420.

    [89] ECF No. 452.

22  [90] *Id*. at 1–2.

23  [91] *Id.* at 2.

    [92] ECF No. 462 (minute order denying in part ECF No. 452).

Plaintiffs object to that ruling.  They now argue, for the first time, that the original subpoena was timely by virtue of the extended discovery deadline and that DOE had until June 4, 2021—the end of that deadline—to answer the original subpoena but failed to do so.[93]  They contend that Judge Weksler's ruling effectively meant that plaintiffs could not "simply propound discovery" because the deadline to do so had passed by the time she entered that order.[94] Unfortunately for plaintiffs, however, DOE's objections and actions were consistent with the discovery rules in federal court.  Plaintiffs' subpoena was defective when it was delivered.  By the time plaintiffs followed up with DOE about the subpoena, DOE was a defendant and did not need to answer it.  Plaintiffs failed to serve proper discovery requests on DOE by the extended discovery deadline and failed to properly request another extension of that deadline.[95]  Plaintiffs' insistence that DOE could have responded to the subpoena by the new discovery deadline misses the point—plaintiffs failed to request that discovery by the methods dictated by the Federal Rules of Civil Procedure.  Judge Weksler's decision not to reissue the DOE subpoena was not legally erroneous—subpoenas are not the proper method to discover information from parties.  I acknowledge that this process can be frustrating for pro se litigants and that the court's strict adherence to these procedural rules has occasionally thwarted plaintiffs' discovery attempts in this case.  But, as plaintiffs have been reminded before, pro se litigants must follow the Federal Rules of Civil Procedure.[96]  Judge Weksler's continued adherence to those rules is what the law

---

[93] *See* ECF No. 470 at 3–4.

[94] *See id.*

[95] Plaintiffs instead filed a "motion for scheduling conference."  ECF No. 441.  Judge Weksler denied that motion and advised plaintiffs that if they sought to extend the discovery deadlines, they must file an appropriate motion.  ECF No. 444.  Plaintiffs did not heed Judge Weksler's advice.

[96] *See* ECF No. 188 at 3 (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)).

and the efficacy of the judicial system require.  So, because Judge Weksler's rejection of

plaintiffs' attempt to reissue a subpoena to a named defendant was not legally erroneous, I

overrule this objection.

### C.    Objection to order staying discovery as to DOE defendants (ECF No. 515)

Plaintiffs object to Judge Weksler's order granting DOE's request to stay discovery until

its motion to dismiss has been resolved.[97]  Plaintiffs' objection primarily disputes Judge

Weksler's determination, from a preliminary peek at DOE's motion to dismiss, that the DOE

defendants would likely be dismissed on immunity grounds.  I address those arguments *infra*

when I address the DOE's motion to dismiss, but Judge Weksler's initial determination was not

the result of any clear legal or factual error.  Indeed, I find that all claims against the DOE

defendants must be dismissed, albeit for some reasons other than immunity.[98]  So I overrule this

objection.

### D.    Objection to motion-to-compel denial (ECF No. 516)

Plaintiffs appeal the magistrate judge's ruling denying their fifth motion to compel

discovery, on the bases that they did not meet and confer with defendant's counsel as required

under Local Rule (LR) 26-6(c) or comply with LR 26-6(b), "which requires the party compelling

discovery to set forth in full the text of the discovery originally sought and any response to it."[99]

Plaintiffs' objection does not address those independent reasons for denying the motion, but

instead complains about a litany of perceived wrongs they've allegedly encountered throughout

the discovery process in this case, repeatedly referring to orders that are not now before me.[100]

---

[97] ECF No. 513 (granting DOE's motion to stay).

[98] *See infra* at §§ II(D), II(I)(4).

[99] ECF No. 514 at 2 (order denying motion to compel).

[100] *See* ECF No. 516 at 7.

None of those perceived wrongs provides a basis to set aside Judge Weksler's order denying plaintiffs' fifth motion to compel discovery, so I direct my focus on the reasons the magistrate judge gave for denying their motion.

The relevant parties indeed did not meet and confer in advance of plaintiffs filing the motion—the record reflects that while plaintiffs conferred with counsel for DOE, they were unable to find a time to confer with CCSD counsel, although the discovery responses plaintiffs sought to compel were from CCSD.[101]  Further, Judge Weksler's determination that plaintiffs did not comply with LR 26-6(b) was correct.  Their motion to compel complained about inadequate productions and detailed what plaintiffs perceived was missing but did not attach the requests and responses for Judge Weksler's review.[102]  As Judge Weksler noted in her order, she has repeatedly informed plaintiffs of the requirements they must follow to have their disputes resolved by this court.[103]  Plaintiffs, yet again, did not follow them.  Because this was a proper basis for that ruling, I overrule their objection.

## II.    Dispositive motions

### A.    Motion-to-dismiss standard

FRCP 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[104]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is

---

[101] *See* ECF No. 496 at 2–3 (response to motion to compel).

[102] *See* ECF No. 477.

[103] ECF No. 514 at 2.

[104] Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

plausible on its face."[105]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[106]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[107]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[108]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[109]  The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[110]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[111]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[112]

---

[105] *Twombly*, 550 U.S. at 570.

[106] *Iqbal*, 556 U.S. at 678.

[107] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original).

[108] *Iqbal*, 556 U.S. at 678–79.

[109] *Id.*

[110] *Id.* at 679.

[111] *Id.*

[112] *Twombly*, 550 U.S. at 570.

**B.      Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[113]  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[114]  A fact is material if it could affect the outcome of the case.[115]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[116]  So the parties' burdens on an issue at trial are critical. When the party moving for summary judgment would bear the burden of proof (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[117]  If it does, the burden shifts to the nonmoving party, who "must present significant probative evidence tending to support its claim or defense."[118] But when the moving party does not bear the burden of proof on the dispositive issue at trial (typically the defendant), it is not required to produce evidence to negate the opponent's claim— its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[119]  The movant need only defeat one element of a claim to garner summary judgment on it

---

[113] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[114] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[115] *Id.* at 249.

[116] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[117] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

[118] *Id.*

[119] *Celotex*, 477 U.S. at 323.

because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[120]

### C.   Plaintiffs' claims against individual defendants

#### 1.   *Claims against official-capacity defendants are redundant of claims against CCSD and DOE.*

Plaintiffs' second-amended complaint names 21 individual defendants—teachers, administrators, and hearing officers who work for CCSD or DOE—in their official capacities.[121] They name only one party—Perry Zirkel—in his individual capacity as well as his official one.[122]  All 21 individuals defendants move to dismiss all claims against them in their official capacities because they are redundant of claims against CCSD and DOE.[123]

Bringing suit against employees of a state or local entity in their official capacities is legally the same as suing the entity itself.[124]  So, because plaintiffs name most of the individual

---

[120] *Id.* at 322.

[121] ECF No. 420 at 2–4; 6–7.

[122] *Id.* at 7.

[123] ECF No. 434 (motion to dismiss Jesus Jara); ECF No. 435 (motion to dismiss individual CCSD defendants); ECF No. 446 (motion to dismiss state defendants).

[124] *See Kentucky v. Graham*, 472 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is not a suit against the official personally, for the real party in interest is the entity.").  *See also Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015) (recognizing that school district is proper party and that naming individual defendants in their official capacities is the functional equivalent of bringing a claim against the school district); *J.R. v. Sylvan Union Sch. Dist.*, 2008 WL 682595, at *13 (E.D. Cal. March 10, 2008) (dismissing school superintendent sued in his official capacity in case where plaintiffs alleged the same claims against the school district); *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1167, 1180 (E.D. Cal. 2014) (dismissing individual defendants named in their official capacities from IDEA and § 504 claims because "suing the administrators in their official capacit[ies] is nothing more than another way of stating a claim against the District itself and is therefore duplicative").

defendants in their official capacities only, those claims are redundant of the claims against CCSD and DOE.  FRCP 21 permits courts to add or drop a party "on just terms."[125]  Because I find that naming the individual defendants named in this action serves no purpose, I dismiss them from this action.[126]

### 2.  *Judicial immunity bars claims against Perry Zirkel.*

Plaintiffs name only one defendant in his individual capacity: Perry Zirkel, the SRO who reviewed IHO Ashley's IDEA determination.[127]  The DOE defendants move to dismiss this suit against Zirkel, arguing that he is entitled to absolute judicial immunity.[128]  Judicial officers are entitled to absolute immunity from liability for "acts committed within their judicial jurisdiction."[129]  This applies to civil actions for damages or equitable relief.[130]  While this immunity "covers only those acts [that] are 'judicial' in nature," a judicial officer "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he acted in the clear

---

[125] Fed. R. Civ. P. 21.

[126] Even if plaintiffs meant to name these defendants in their individual capacities, a thorough review of the second-amended complaint reveals that plaintiffs have not alleged facts that support claims against them in their personal capacities and cannot plausibly do so.  So I dismiss all claims against these defendants without leave to amend because amendment would be futile.

[127] ECF No. 420 at 7.

[128] ECF No. 446 at 8–11.  They also ask to dismiss the claims against Ashley, Eckrem, Oldunberg, and Resch on this basis, but because I dismissed the claims against them in the pervious section, *see supra* at § II(C)(1), I focus only on whether Zirkel is entitled to immunity for the claims against him in his individual capacity.

[129] *Pierson v. Ray*, 386 U.S. 547, 554 (1947).

[130] *See Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987).

absence of all jurisdiction."[131]  This judicial immunity "extends to agency officials when they preside over hearings, initiate agency adjudication, or otherwise perform functions analogous to judges and prosecutors."[132]

Plaintiffs do not dispute that Zirkel functions as a judicial officer,[133] and I find that he does.  SROs independently review appeals of IHO decisions, much like any circuit judge reviews appeals of district-court orders.[134]  And plaintiffs' allegations against Zirkel exclusively concern Zirkel's order affirming IHO Ashley's determination.  Plaintiffs contend that Zirkel's decision affirming Ashley's determination was "based on the premise of hearsay and does not have any factual evidence" to support his findings.[135]  They further allege that Zirkel "erred by giving greater deference to the credibility determinations by IHO Ashley, which is insufficiently supported by material evidence, and nor [sic] applied to the due weight standard."[136]  In short,

---

[131] *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (citing *Stump v. Sparkman*, 435 U.S. 349, 360–61 (1978)).

[132] *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (citing *Butz v. Economou*, 438 U.S. 478, 514–15 (1978) (finding that federal administrative-law judges are entitled to absolute immunity)).

[133] Plaintiffs instead argue that absolute immunity does not apply because the IHOs and SROs in this case violated "clearly establish[ed] statutory or constitutional rights."  ECF No. 478 at 17.  The standard plaintiffs refer to is a defense to *qualified* immunity, not *absolute* immunity, and does not apply here.

[134] *See* AR 2418 (Zirkel's order describing the standard for review for an SRO under the IDEA).  Courts routinely apply judicial immunity to hearing and review officers like Zirkel.  *See, e.g.*, *Demoran v. Witt*, 781 F.2d 155, 156–57 (9th Cir. 1985) (noting that "judicial immunity has been extended to federal hearing officers[,] administrative law judges, . . . and state parole officers"); *Burnell v. Marin Humane Society*, 2015 WL 6746818, at *6 (N.D. Cal. Nov. 5, 2015) (applying judicial immunity to state administrative hearing officer); *R.S. v. Bd. of Educ. Shenandehowa Cent. Sch. Dist.*, 2017 WL 6389710, at *3 (N.D.N.Y. Dec. 13, 2017) (applying judicial immunity to SRO who reviewed administrative appeals and rendered independent decisions); *Avaras v. Clarkstown Cent. Sch. Dist.*, 2018 WL 4964230, at *17 (S.D.N.Y. Oct. 15, 2018) (applying judicial immunity to IHO who presided over IDEA administrative hearing).

[135] ECF No. 420 at ¶ 101.

[136] *Id*. at ¶ 102.

22

plaintiffs' only allegations against Zirkel concern their dissatisfaction with how he ruled on plaintiffs' appeal of IHO Ashley's decision.  But alleged errors in a judicial decision are precisely the type of actions that absolute immunity is meant to shield.  So, because Zirkel is entitled to judicial immunity for acts related to his rejection of plaintiffs' appeal, he is dismissed from this case.  This leaves only claims against DOE and CCSD.

### D.    DOE's sovereign-immunity defense

DOE contends that it is immune from the entirety of plaintiffs' claims because Nevada has not waived its Eleventh Amendment immunity.[137]  As to plaintiffs' § 1983 and negligence claims, DOE is correct.  The Eleventh Amendment prohibits federal courts from hearing suits brought by citizens against state governments and their agencies absent the state's consent to suit or congressional abrogation of a state's immunity from a specific statute.[138]  Nevada has expressly retained its Eleventh Amendment immunity through Nevada Revised Statute (NRS) § 41.031(3), and the Ninth Circuit has repeatedly held that Nevada and its agencies and departments like the DOE are immune from § 1983 actions in federal court.[139]

The same also holds true for plaintiffs' negligence claim.  While NRS 41.031(1) permits tort suits against the state, it only allows such suits *in state court*.[140]  And while normally,

---

[137] ECF No. 446 at 4–5.

[138] *See* U.S. Const. Amend. XI; *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984).

[139] *See Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 877 (9th Cir. 2002); *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (Eleventh Amendment barred § 1983 claims against Nevada agency); *Austin v. State Indus. Ins. Sys.*, 939 F.3d 676, 677 (9th Cir. 1991) (same).

[140] *See Carey*, 279 F.3d at 877 (recognizing that "Nevada's waiver of sovereign immunity only gives Nevada's consent to suits in its own courts") (internal quotations and citations omitted); *Fowler v. Sisolak*, 2020 WL 2104932, at *2 (D. Nev. May 1, 2020) (recognizing waiver of immunitiy applies to tort actions in state court, but not those brought in federal court).

removing an action from state to federal court can waive this immunity,[141] DOE was not party to this action when it was removed.  Because it was added as a party when this case was proceeding solely in federal court, plaintiffs' negligence claim against DOE cannot proceed.  I thus find that DOE enjoys Eleventh Amendment immunity from suit on plaintiffs' § 1983 and negligence claims and dismiss those claims against it.

However, DOE does not adequately demonstrate that it is immune from plaintiffs' IDEA, ADA, or Rehabilitation Act claims.  The Supreme Court has held that Title II of the ADA abrogates sovereign immunity for states that accept federal funds under the Act in some circumstances.[142]  The Ninth Circuit has held that Congress validly abrogated sovereign immunity for claims under the Rehabilitation Act.[143]  And many courts deciding the question have held the same for the IDEA.[144]  DOE does not brief these distinctions, so I decline to extend sovereign immunity to plaintiffs' IDEA, ADA, and Rehabilitiation Act claims.

### E.    Plaintiffs' § 1983 claim against CCSD

To state a § 1983 claim, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged violation was committed by a person acting under color of state law.[145]  But even if federal law provides for a particular right, a plaintiff may not use § 1983 to enforce that right if "Congress has

---

[141] *See Lapides v. Bd. of Univ. Sys. of GA*, 535 U.S. 613 (2002).

[142] *U.S. v. Georgia*, 546 U.S. 151, 159 (2006) (holding that, "insofar as Title II creates a private cause of action for damages against the [s]tates for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity").

[143] *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir. 2001).

[144] *See, e.g.*, *A.W. v. Jersey Pub. Sch.*, 341 F.3d 234, 244–55 (3d Cir. 2003) (holding that the IDEA abrogates state sovereign immunity and canvassing relevant decisions in other circuits).

[145] *See West v. Atkins*, 487 U.S. 42, 48 (1988).

foreclosed citizen enforcement in the enactment [of that law] . . . by imbuing it with its own comprehensive scheme."[146]  The Ninth Circuit has held that the IDEA contains a comprehensive enforcement scheme that "evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA."[147]  To determine whether a plaintiff's § 1983 claim is precluded by the IDEA, courts in the Ninth Circuit look to "whether the gravamen of [his] claim for relief is under the IDEA."[148]  A § 1983 claim is foreclosed by the IDEA if the plaintiff seeks "(1) monetary relief as the functional equivalent of a remedy available under the IDEA, (2) prospective injunctive relief to alter an IEP or the educational placement of a disabled student, or (3) to enforce rights that arise as a result of a denial of a FAPE."[149]  The Ninth Circuit has further held that a claim for the denial of "sufficient access to discovery during administrative proceedings," for example, is the "functional equivalent of a claim of procedural defect under the IDEA;" so a plaintiff is limited to relief available under the IDEA, and such a claim cannot be brought under § 1983.[150]

---

[146] *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).

[147] *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007), *overruled on other grounds by Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011).

[148] *C.O. v. Portland Public Schools*, 679 F.3d 1162, 1167 (9th Cir. 2012).

[149] *Id.* at 1168 (cleaned up).

[150] *Id.*  The Ninth Circuit's standard concerning whether § 1983 claims are foreclosed by the IDEA is based on its standard to determine whether non-IDEA claims must be exhausted in IDEA proceedings to be heard in federal court. *See id.*  Since the Ninth Circuit articulated these standards, the Supreme Court clarified how to determine whether non-IDEA claims must be exhausted. *Fry v. Napolean Cmty. Schools*, 137 S. Ct. 743 (2017); *see also S.B. by and through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1245–48 (E.D. Cal. 2018) (detailing the tension between *Fry* and Ninth Circuit exhaustion precedent).  The Ninth Circuit has not yet revisited its standard on § 1983 foreclosure in light of *Fry*.  While *Fry* takes a slightly different approach to exhaustion, it does not explicitly overrule *C.O.*'s method of determining whether § 1983 claims are foreclosed by the IDEA's enforcement scheme.  So I continue to apply *C.O.*'s standards here.

Plaintiffs' § 1983 claim describes the actions of various state actors who handled their due-process complaints. They complain of IHO Resch's Facebook connection to CCSD's counsel, a variety of evidentiary decisions made by IHO Ashley, and the legal adequacy of Zirkel's determination on appeal.[151] In the complaint's § 1983 section, they mention only the IDEA as the source of the right they contend was violated.[152] In a different section of their complaint, they conclusorily state that "AAA has a right to due process and equal protection under the Fourteenth Amendment."[153] They connect these IDEA violations and the Fourteenth Amendment when they conclusorily claim that employees of DOE and CCSD "acted under color of state law" when "CCSD deprived [AAA] of statutorily protected civil rights to a FAPE as guaranteed by federal and state laws for the education of [children with disabilities] and as protected by the Fourteenth Amendment."[154] And a review of plaintiffs' claims for relief demonstrate that they seek a host of educational interventions to be incorporated into AAA's future IEPs and for tutoring reimbursements traditionally sought under the IDEA.[155] Plaintiffs' § 1983 claims and relief they seek are clearly predicated on their allegations that AAA was denied a FAPE and are therefore precluded by the IDEA's enforcement scheme.

---

[151] ECF No. 420 at ¶¶ 81–102.

[152] *Id.* at ¶ 103.

[153] *Id.* at ¶ 147.

[154] ECF No. 420 at ¶ 157.

[155] ECF No. 420 at 34–35. They also seek "damages of $3,000,000 for pain and suffering, unreasonable risk to Plaintiff AAA['s] health, stress, emotional damages relating to the disability discrimination and injury described herein." *Id.* at 35. Based on the description of the relief sought, plaintiffs appear to seek that relief under their ADA and negligence claims, not any § 1983 claim. Plus, "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayed for relief to money damages." *Payne*, 658 F.3d at 877. And at least one other court in this circuit has held that "FAPE-based IDEA claims seeking money damages for injuries caused by the deprivation of FAPE are subject to exhaustion under § 1415(l)." *S.B. by and through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1249 (E.D. Cal. 2018).

To the extent plaintiffs' complaint can be construed to allege a separate constitutional infirmity with the due process provided in the state administrative hearings, plaintiffs present no coherent legal theory to support that claim. To make out a procedural due-process claim, a plaintiff must show "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) denial of adequate procedural protections."[156]   Plaintiffs' allegations do not meet that threshold. Assuming without deciding that the IDEA's process creates some sort of entitlement or expectation interest in educational benefits, plaintiffs present no facts or evidence indicating that they were deprived of fair process in the administrative proceedings. The record instead reflects that plaintiffs were able to present their case at two full-fledged administrative hearings—AAA's father received and presented evidence, took testimony from teachers, administrators, and his independent evaluator, and thoroughly participated in the process.[157]   The Fourteenth Amendment's due-process guarantee extends to ensuing fair procedures, notice, and an opportunity to be heard. But it does not promise plaintiffs an unfettered ability to present any evidence or witnesses they choose. Plaintiffs have not carried their burden to show that the state hearings lacked procedures to ensure that the process remained fair. So I grant summary judgment to CCSD on this claim.[158]

---

[156] *Brewster v. Bd. of Educ. of Lynnwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

[157] *See* AR 1–472 (first due-process hearing); AR 985–1405 (third due-process hearing).

[158] Plaintiffs have also failed to allege or prove any causal connection between CCSD and the actions of the DOE's administrative process or plaintiffs' specific allegations of harm. To the extent this claim could be construed as one seeking prospective injunctive relief against the individual DOE defendants, plaintiffs don't seek relief to correct any specific flaw in the administrative process. Their requested relief seeks educational services that CCSD is best suited to provide or monetary damages that cannot be awarded against the state entities or officials sued here.

### F.    ADA and § 504 discrimination claims

Plaintiffs conclusorily allege that CCSD and DOE's actions also violate Title II of the ADA and the anti-discrimination portion of § 504 of the Rehabilitation Act.  The facts they recite in conjunction with those claims are the same as those they cite to support their IDEA claims.  But to prevail on an ADA or § 504 discrimination claim,[159] a plaintiff must prove that "(1) she is a qualified individual with a disability; (2) she was denied 'a reasonable accommodation that [she needs] . . . in order to enjoy meaningful access to the benefits of public services'; and (3) the program providing the benefit receives federal financial assistance."[160]  And "to prevail on a claim for damages under section 504 and Title II, 'plaintiffs must prove a *mens rea* of intentional discrimination . . . [and] that standard may be met by showing deliberate indifference[.]'"[161]

Again, plaintiffs' claims center solely around CCSD's handling of AAA's IDEA evaluations, IEPs, and IEEs.  Their response to the summary-judgment motion repeats the same allegations concerning CCSD's failure to track AAA's educational progress and provide her with a FAPE to support their discrimination claims.  They do not demonstrate that AAA was denied any particular reasonable accommodation based on her disability.  Nor do plaintiffs present evidence that supports a finding of intentional discrimination or deliberate indifference by any defendant.  So I grant summary judgment to CCSD and DOE on plaintiffs' ADA and § 504 discrimination claims.

---

[159] Plaintiffs also appear to bring a challenge under § 504's FAPE requirements.  I address those claims in the IDEA section, *see infra* at § II(I)(5), as "adopting a valid IDEA IEP is sufficient . . . to satisfy the § 504 FAPE requirements."  *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098–99 (9th Cir. 2013).

[160] *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010)).

[161] *Id.* (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 928 (9th Cir. 2008)).

### G.      Negligence claims against DOE and CCSD

Plaintiffs allege negligence against all defendants, but primarily against CCSD.  They claim that CCSD owed AAA a special duty of care and breached that duty when it inadequately responded to her 2016 bus injury.[162]  I do not reach the adequacy of that claim, as plaintiffs have failed to meet the legal requirements to bring a negligence claim in Nevada.

Under NRS § 41.036(2), any person who has a claim against the state, a state agency, or any political subdivision of the state "arising out of a tort must file the claim within two years after the time the cause of action accrues with the governing body of that political subdivision."[163]  CCSD argues that plaintiffs have failed to demonstrate that they provided any such notice of their negligence claim to CCSD within the two-year period.[164]  Plaintiffs do not contest this; they merely state that they "dispute [] CCSD['s] interpretation" of the statute.[165] The CCSD's interpretation is correct—plaintiffs needed to serve notice of their negligence claim within two years of accrual of AAA's injuries stemming from the bus incident.  And a review of the evidence presented in this case confirms that plaintiffs did not serve such notice on CCSD or DOE until arguably 2020 when they filed this lawsuit—two years after the two-year statute of limitations expired.[166]  So I grant CCSD's motion for summary judgment on plaintiffs' negligence claim as it relates to AAA's 2016 bus injury and I dismiss that claim as time-barred.

---

[162] ECF No. 420 at ¶¶ 105–38.

[163] Nev. Rev. Stat. § 41.036(1), (2).

[164] ECF No. 507 at 18–19.

[165] ECF No. 510 at 28.

[166] Even if this lawsuit can constitute notice under NRS § 41.036, it is unclear whether plaintiffs served notice on the "governing body" of CCSD when they filed this lawsuit.  *See Ritchie v. Clark Cnty. Sch. Dist.*, 2020 WL 8484713, at *3 (D. Nev. May, 15, 2020) (noting that the "governing body" for CCSD is the board of trustees under NRS § 388.126).

### H.    Privacy claims against CCSD

Plaintiffs claim that their privacy rights were violated when Dr. Davis released a copy of her IEE report to CCSD without parental consent.  In their complaint and various responses to defendants' motions, plaintiffs identify the source of this right as stemming from FERPA,[167] the Health Insurance Portability and Accountability Act (HIPAA),[168] the Federal Privacy Act,[169] and the IDEA.[170]  But plaintiffs concede that they cannot bring a HIPAA claim because HIPAA does not contain a private right of action.[171]  FERPA's nondisclosure provisions similarly lack an individual enforcement mechanism.[172]  And the Federal Privacy Act applies to federal agencies, not the state and county actors involved here.[173]

---

[167] 20 U.S.C. § 1232g.

[168] Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.).

[169] 5 U.S.C. § 552a.

[170] 34 C.F.R. § 303.401 (IDEA's confidentiality regulations).  Plaintiffs also loosely mention the U.S. Constitution's right to privacy in their briefs, but they do not actually allege or argue that the District's actions violated that constitutional right.  *See* ECF No. 510 at 26 (including a heading titled "Right To Privacy Under The United States Constitution," followed by a discussion of rights under FERPA).  Plaintiffs also argue—for the first time in their response to CCSD's motion to summary judgment—that they may bring a claim under "The Confidentiality of Medical Information Act … (Civ.Code § 56 et seq.)."  ECF No. 510 at 27.  I do not consider this as a claim because it was not raised in the complaint.  Further, the act plaintiffs identify is a California statute, *see Cal. Civ. Code.* § 56.10, and plaintiffs don't specify how or why a California law is applicable to this case brought by a Nevada resident against a Nevada school district.

[171] ECF No. 510 at 27.  *See also Garmon v. Cnty. of L.A.*, 828 F.3d 837, 847 (9th Cir. 2016) (quoting *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007)).

[172] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (holding that "FERPA's nondisclosure provisions fail to confer enforceable rights").  Most courts to decide the issue have extended *Gonzaga*'s holding to apply to all FERPA provisions.  *See, e.g., Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 783 (2d Cir. 2002); *United States v. Miami Univ.*, 294 F.3d 797, 809 n.11 (6th Cir. 2002); *Henry v. Universal Tech. Inst.*, 559 F. App'x 648, 651 (9th Cir. 2014) (unpublished) (FERPA "does not provide for a private right of action").

[173] *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999) ("The civil remedy provisions of the [Privacy Act] do not apply against private individuals, state agencies, private entities, or state

Turning my focus to the IDEA, plaintiffs have not identified any legal theory supporting their claim that the law prevents CCSD from receiving an IEE report that CCSD paid for. CCSD's procedural guidelines require such a consent, but plaintiffs have not shown that any federal law contains the same requirement.  The IDEA's regulations affirm a parent's right to the "confidentiality of personally identifiable information, including the right to written notice of, and written consent to, the exchange of information among agencies, consistent with Federal and State laws."[174]  Plaintiffs have not shown whether—and if so, how—these regulations govern the actions of an independent evaluator or that they require school districts to obtain parental consent to receive an IEE report from an independent evaluator.  The IDEA's plain text and implementing regulations concerning confidentiality or IEEs do not clearly require such consent.[175]

Indeed, it's difficult to see how this is a justiciable issue at all.  Plaintiffs do not contest the contents of Dr. Davis's report.[176]  And the District has produced evidence that AAA's father signed a form giving consent to Dr. Davis to release personally identifiable information from her evaluation.[177]  So, because plaintiffs cannot point to any law that the District violated by

---

and local officials.") (emphasis omitted) (quoting *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985)).

[174] 34 C.F.R. § 303.401.

[175] *See* 20 U.S.C. § 1415; 34 C.F.R. §§ 300.502; 300.401.

[176] *See, e.g.*, ECF No. 510 at 12 –13 (plaintiffs' admission that they do not dispute the contents of Dr. Davis's IEE report).

[177] ECF No. 507-5 at 2.  The parties disagree about the scope of the signed consent form CCSD produced.  Plaintiffs claim that any consent conferred by the form expired "at the completion of therapy" and therefore that Dr. Davis no longer had consent when she emailed the form a few days after she stopped providing services.  Defendants argue that the consent form applies through Dr. Davis's email.  This dispute of fact is not material because I find that, regardless of whether plaintiffs signed a consent, CCSD did not violate the IDEA by accepting the IEE report.

accepting Dr. Davis's report, and because there is no legitimate controversy concerning the use of the report, I grant summary judgment in favor of CCSD and DOE on plaintiffs' privacy-related claims, whether they arise from the IDEA, FERPA, HIPAA, or the Federal Privacy Act.

### I.   IDEA claims

#### 1.   IDEA exhaustion and timeliness standards

The IDEA establishes a procedure by which parents unsatisfied with a district's IDEA compliance may file a due-process complaint with the state's education agency.[178]   The state agency must follow robust procedural rules to ensure that the parents are aware of their rights through the hearing process and have access to all relevant evaluations and recommendations pertaining to their child's educational needs.[179]   The agency must hold an impartial hearing, after which the state hearing officer must issue a substantive decision concerning whether the child received a FAPE.[180]   Nevada has established a two-tier administrative-hearing process.   The due-process complaint is first heard by an IHO.[181]   The parent may appeal an IHO's decision to an SRO within 30 days,[182] and if the parents disagree with the SRO's decision, they may appeal "by initiating a civil action in a court of competent jurisdiction within 90 days."[183]   Plaintiffs who sue under the IDEA must have exhausted their claims through the state process and timely appealed to proceed in federal court.[184]   Exhaustion under the IDEA is not a jurisdictional bar but "rather a

---

[178] 20 U.S.C. § 1415(c)(2).

[179] *Id*. at § 1415(d), (f)(2), (h).

[180] *Id*. at § 1415(f), (f)(3)(E).

[181] Nev. Admin. Code. § 338.310.

[182] *Id*. at § 388.315(1).

[183] *Id*. at § 388.315(3); *see also* 20 U.S.C. § 1415(i)(2)(B).

[184] 20 U.S.C. § 1415(i)(2)(B).

claims processing provision that defendants may offer as an affirmative defense."[185]  The

Supreme Court has interpreted the IDEA's exhaustion requirement to extend to claims under

other statutes—like the ADA and § 504—if those claims "seek[] relief for the denial of an

appropriate education."[186]

### 2.   To the extent plaintiffs allege IDEA, Section 504, or ADA claims related to AAA's 2016 bus injury, those claims were not exhausted.

Plaintiffs' second-amended complaint attempts to link AAA's 2016 bus injury to the

onset of her disabilities and defendants' actions responding to the injury with her impeded

academic progress.[187]  Plaintiffs did not raise this issue in any of the due-process complaints that

proceeded to a hearing.[188]  So, to the extent plaintiffs are asserting an IDEA claim related to

AAA's injury, that claim is unexhausted and I therefore grant summary judgment to CCSD and

DOE on it.

### 3.   Plaintiffs' claims related to AAA's 2016 reevaluation and 2017–18 IEP are untimely.[189]

Plaintiffs also contest the results of AAA's 2016 reevaluation that resulted in her IDEA

eligibility category being changed from autism spectrum disorder to hearing impairment.

---

[185] *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 907 n.2 (9th Cir. 2020) (citing *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)).

[186] *Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743, 755 (2017).

[187] *See* ECF No. 420 at ¶¶ 132–141; ECF No. 510 at 3–4 (plaintiffs "dispute[] that the bus incident is the cause of AAA's current disabilities," stating that the injury was "insufficiently documented, and AAA's academic progress was insufficiently monitored afterwards").

[188] *See* ECF No. 507 at 23; AR 487–94 (first due-process complaint); AR 1412–30 (third due-process complaint).

[189] Defendants argue that these claims are also unexhausted because plaintiffs did not timely appeal SRO Eckrem's decision within the statutory period for doing so.  To simplify things and

1  Plaintiffs raised these concerns in their first due-process complaint before IHO Oldenburg and

2  SRO Eckrem, but they failed to appeal Eckrem's decision within 90 days of his order.  So

3  plaintiffs have not timely appealed their claims concerning AAA's 2016 reevaluation or her

4  2017–18 IEP and cannot bring them now.

5       Plaintiffs appear to request that their untimeliness be excused because they interpreted

6  their filing of a second and third due-process complaint as a continuation of their first.  Plaintiffs

7  fail to cite any legal authority that would permit a court to overlook the IDEA's clear timeliness

8  requirements.  Even if they did, plaintiffs fail to provide an adequate explanation for their

9  noncompliance.  Plaintiffs' first due-process hearing was explicitly limited to determining

10 whether the District's actions in 2016 and the 2017–18 school year violated the IDEA.[190]  IHO

11 Oldenburg expressly declined to consider issues related to the IEE report and AAA's 2018–19

12 school year.[191]  Plaintiffs' arguments do not justify their failure to timely appeal the discrete

13 issues raised before IHO Oldenburg and IHO Eckrem.  I thus hold that plaintiffs' appeal of any

14 issues raised in the first due-process hearing are untimely and grant summary judgment to CCSD

15 and DOE on these claims.

16       **4.    *Plaintiff's remaining IDEA claims against DOE are untimely.***

17       The parties appear to agree that plaintiffs timely appealed SRO Zirkel's decision.  DOE,

18 however, argues that those claims—as stated against DOE—were not timely because DOE was

19

20

21

_____

22 distinguish this procedural defect from the one discussed above, I refer to this issue as one of
   timeliness, not exhaustion.

23 [190] *See* AR 846–870.

   [191] AR 846 n.2.

1  added as a defendant long after the 90-day appeal period expired, and the second-amended

2  complaint adding it as a defendant does not relate back to the original complaint.[192]

3         FRCP 15(c)(1)(C) states that "an amendment to a pleading relates back to the date of the

4  original pleading when . . . the amendment changes the party or the naming of the party against

5  whom a claim is asserted if . . . the amendment asserts a claim or defense that arose out of the

6  conduct, transaction, or occurrence set out—or attempted to be set out—in the original

7  pleading"; and if, within 90 days of service of the complaint,[193] "the party to be brought in by

8  amendment (i) received such notice of the action that it will be prejudiced in defending on the

9  merits; and (ii) knew or should have known that the action would have been brought against it,

10 but for a mistake concerning the proper party's identity."[194]  DOE does not contest that the

11 substance of the amended complaint involves the same conduct as the original complaint, so I

12 focus on the notice requirements in FRCP 15(c)(1)(C).

13        DOE was added as a defendant on April 13, 2021—473 days after the plaintiffs'

14 complaint was filed—and was served with the second-amended complaint a week later.[195]  At

15 the earliest, DOE states that it was made aware of this litigation in April 2020, more than 90 days

16 from the original filing of the complaint.[196]  DOE, although it was aware of this litigation well

17 before plaintiffs named it as a party, had no reason to believe that it would be added to this

18 litigation.  Plaintiffs argue in response to DOE's motion that they filed other complaints against

19

20 _____

[192] ECF No. 446 at 13–16.

21 [193] The rule adopts the time period allowed for service in FRCP 4(m), which is 90 days.  *See* Fed.
R. Civ. P. 4(m).

22 [194] Fed. R. Civ. P. 15(c)(1)(C)(i), (ii).

23 [195] *See* ECF No. 420; ECF No. 446 at 16 n.19.

[196] *See* ECF No. 446 at 16 n.20.

it with the U.S. Department of Education and other agencies.[197]  But those filings had no bearing on whether DOE should have expected to be called into civil litigation that was proceeding solely against CCSD in federal court.  So, because I find that DOE lacked notice that it would be haled into court on plaintiffs' IDEA claims, I find that the second-amended complaint's allegations against DOE do not relate back to the original complaint and are therefore untimely. On this basis, I dismiss the remaining IDEA claims against DOE.

### 5.    *CCSD does not carry its summary-judgment burden on plaintiffs' remaining IDEA and § 504 claims.*

CCSD is now the sole remaining defendant in this case.  I construe plaintiffs' claims related to AAA's 2018–19 school year as an appeal of SRO Zirkel's determination that the District did not violate the IDEA when it delayed implementation of AAA's IEP and failed to produce evidence that her former IEP was inadequate.[198]  Plaintiffs allege that CCSD "substantially delayed the implementation of AAA's IEP 2018–2019 school years, which provided her inadequate education, and denies her of a FAPE."[199]  They contend that CCSD did not "provide any evidence of [its] methodology to improve AAA's MAP[s] scores and have failed to provide evidence of [its] progress monitoring between quarterly benchmarking periods," and the District's "absence of evidence of AAA's regular assessments and infrequent review of her data reflects that the [d]efendants did not implement AAA's IEPs with fidelity."[200]  They also

---

[197] ECF No. 478 at 26.

[198] Plaintiffs also invoke § 504's FAPE requirements.  Because "adopting a valid IDEA IEP is sufficient . . . to satisfy the [§] 504 FAPE requirements," *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013) (quotation and emphasis omitted), I consider plaintiffs' § 504 FAPE claims to be largely coextensive with their IDEA claims.

[199] ECF No. 420 at ¶¶ 42, 50.

[200] *Id.* at ¶¶ 76–79.

take issue with numerous actions taken by IHO Ashley before and during the due-process hearing, arguing that her determination should not have been accorded any deference by SRO Zirkel and deserves no further deference by this court.[201]

CCSD's summary-judgment motion does not specifically address these allegations or explain why SRO Zirkel's decision was correct or IHO Ashley's actions were procedurally proper.  It merely states that:

> the administrative record as thoroughly and completely reviewed by two IHOs and two SROs establishes that the CCSD has provided AAA with [a] FAPE as well as educational benefit.  *See*, Exhibits A, B, C, and D.  Moreover, Plaintiffs' claim predicated on finding a violation of the Section 504 FAPE standard fails because the IDEA FAPE requirement has been met.[202]

CCSD also claims that plaintiffs "were informed of their due process rights on too many occasions to numerate, and that parents were given the opportunity to prosecute their claims with all the due process rights accorded them by the IDEA.  (*See generally*, AR 1–2428)."[203]

A defendant moving for summary judgment must either show undisputed evidence proving that the plaintiffs cannot prevail on their claims, or it must "affirmatively show the absence of evidence in the record."[204]  "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the [c]ourt need not consider whether the moving party has met its ultimate burden of persuasion."[205]  Citing

---

[201] *See id.* at ¶¶ 87–94.

[202] ECF No. 507 at 19.  The cited exhibits consist of the four administrative decisions from AAA's first and third due-process hearings.  ECF Nos. 507-1–4.

[203] ECF No. 507 at 20.

[204] *Celotex Corp.*, 477 U.S. at 332 (internal citations omitted).

[205] *Id.*

generally to a 2,000-page record is insufficient to support a summary-judgment motion.[206] While some of plaintiffs' claims are legally insufficient and therefore do not need specific citations to the record, this is not true of plaintiffs' exhausted and timely IDEA claims.  Plaintiffs have raised specific disputes with the IHO and SRO's findings concerning the district's provision of a FAPE in AAA's 2018–19 year, its decision to delay implementation of a new IEP during that year, and procedural concerns with the hearing officers' handling of plaintiffs' complaint that could influence how a federal district court should consider the decisions made at the state administrative level.[207]  Defendants' general citations to those decisions and the administrative record as a whole are insufficient to show that plaintiffs have no evidence to support their appeal.   Nor does CCSD provide the standards for review of an IDEA appeal or engage in any analysis of those standards.  So I deny CCSD's motion for summary judgment on any claims related to plaintiffs' 2019 hearing and decisions, with one notable exception.  As discussed *supra*, there is no legal support for plaintiffs' allegation that some failure to consent to the transmission of AAA's IEE report violated the IDEA.  So CCSD is entitled to summary judgment on any consent challenge in plaintiffs' complaint.

In sum, I deny CCSD's motion for summary judgment on a distinct portion of plaintiffs' IDEA claims, without prejudice to refiling a properly supported motion.  This case thus proceeds against CCSD alone and only on plaintiffs' IDEA claims based on the appeal of SRO Zirkel's

---

[206] "It behooves litigants, particularly in a case with a record of this magnitude, to resist the temptation to treat judges as if they were pigs sniffing for truffles."  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.* (*In re Oracle Corp. Sec. Litig.*), 627 F.3d 376 (9th Cir. 2010).

[207] In IDEA cases, courts do not give unfettered deference to the decisions of state hearing officers.  *See J.G. v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008) (noting that, in IDEA cases, the Ninth Circuit "does not employ a highly deferential standard of review" and instead gives "deference to thorough and careful administrative findings") (cleaned up).  They must instead conduct a review of the record to determine whether some deference is warranted.

decision concerning the delay of AAA's 2018–2019 IEP and whether she recieved a FAPE during that year.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiffs' objections to the magistrate judge's orders **[ECF Nos. 417, 470, 515, and 516] are OVERRULED**.[208]

IT IS FURTHER ORDERED that the individual CCSD defendants' motions to dismiss **[ECF No. 434 and 435] are GRANTED**.  **All claims against defendants Jesus Jara, Jelanie Elby, Jodie Schraven, Melonie Poster, Nicole Baumgartner, Shelbe Rogers, Teri Aquilina, Daniel Ebihara, Sonya Holdsworth, Markos Stoumibs, Armine Darmandjian, Melody Thompson, Rachael Jacobi, Robert C. Weires, and Barbara Fair are dismissed from this action**.  **The Clerk of Court is directed to TERMINATE these defendants from this action.**

IT IS FURTHER ORDERED that the Nevada Department of Education's motion to **dismiss [ECF NO. 446] is GRANTED as follows:**

- **All claims against defendants Jhone Ebert, Will Jensen, Connie Torres, Elizabeth Ashley, Jamie Resch, and Perry Zirkel are dismissed from this action, and the Clerk of Court is directed to TERMINATE them as active parties.**
- Plaintiffs' § 1983, negligence, and IDEA/§ 504 FAPE claims related to plaintiffs' third due-process hearing against the Nevada Department of Education are dismissed.

IT IS FURTHER ORDERED that CCSD's motion for summary judgment **[ECF No. 507] is GRANTED in part as follows:**

---

[208] To the extent that these objections are more properly appeals from magistrate-judge rulings, they are denied after a de novo review.

- Summary judgment is granted in favor of CCSD and against the plaintiffs on their § 1983, negligence, ADA, § 504 discrimination, and privacy claims. Summary judgment is also granted in CCSD's favor on the IDEA/§ 504 claims related to plaintiffs' first due-process hearing and bus injury.

- Summary judgment is granted in favor of DOE and against the plaintiffs on their ADA, § 504 discrimination, privacy, and IDEA/§ 504 FAPE claims related to plaintiffs' first due-process hearing and bus injury.

This leaves no claims pending against the Nevada Department of Education, so **the Clerk of Court is directed to TERMINATE this defendant from this case**.

**This case proceeds only on plaintiffs' IDEA and § 504 FAPE claims against CCSD related to AAA's 2018–19 FAPE, delayed IEP, and arguments concerning the deference owed to the state administrative decisions.**

IT IS FURTHER ORDERED that CCSD's motion to dismiss **[ECF No. 458] is DENIED** as moot.

IT IS FURTHER ORDERED that the final deadline for renewed dispositive motions is extended to **March 2, 2022**. Either party may file a dispositive motion by this deadline.

IT IS FURTHER ORDERED that if dispositive motions are not filed, the proposed pretrial order is due **March 16, 2022**.

_____
U.S. District Judge Jennifer A. Dorsey
February 1, 2022